Josephine GEITZ (Plaintiff), R. Shad Bennett (Intervenor), Appellant,

v.

Chester GRAY (Defendant), United States of America (Intervenor), Respondent.

No. 29264.

St. Louis Court of Appeals.

Missouri.

June 14, 1955.

Rehearing Denied July 15, 1955.

860

R. Shad Bennett, Clayton, pro se.

Harry Richards, U. S. Atty., E. D. Missouri, and Robert E. Brauer, Asst. U. S.

Atty., E. D. Missouri, St. Louis, for respondent.

MATTHES, Judge.

In November, 1951, Josephine Geitz, hereinafter referred to as plaintiff, and Carl E. Starkloff, an attorney at law, entered into a contract whereby Starkloff agreed to represent plaintiff in her claim for damages for wrongful death of her husband. Starkloff was to receive a fee of 35% of the amount recovered for plaintiff. Thereafter, and in the same month, R. Shad Bennett, hereinafter called appellant, who is also an attorney, was brought into the case by Starkloff to assist in the prosecution of plaintiff's claim. Under their agreement the fee recovered, based upon the 35% contract, was to be divided equally between them. There was a suit filed in behalf of plaintiff in the Circuit Court of Lincoln County, Missouri. Following some pretrial proceedings, such as the taking of depositions, the case was tried in said county, resulting in a verdict and judgment in favor of plaintiff for $5,650. Appellant actively participated in the preparation for, and trial of, the case.

Prior to the trial, Starkloff and appellant agreed that Honorable Omer H. Avery, an attorney of Troy, Missouri, should be retained as local counsel to assist in the trial. Avery was actually contacted by Starkloff and participated in the trial of the case. Following the trial, and on December 10, 1952, the insurance company interested in the outcome of the case and obligated to pay the judgment rendered therein, issued its draft for the amount of the judgment, payable to plaintiff and Carl E. Starkloff, appellant, and Omer H. Avery, her attorneys. Having been served on July 7, 1952, with a levy by the United States Collector of Revenue against the interest of Starkloff in plaintiff's claim for unpaid income taxes, plaintiff refused to endorse the draft. This precipitated the filing of a motion in Lincoln County Circuit Court by the three attorneys who had represented plaintiff in the trial, styled, "Motion of * * * to correct records". In reality, the object of the motion was to obtain an order to compel plaintiff to endorse the draft; to direct the circuit clerk to reduce draft to cash, and then pay 35% of the amount thereof to appellant and balance of 65% to plaintiff.

In time, there was an order entered by the court under which plaintiff was paid the amount due her. This left $1,882.50 in the registry of the Circuit Court of Lincoln County, (35% of the judgment less the amount advanced by plaintiff to defray costs). Leave having been obtained, the United States of America, hereinafter called respondent, intervened and filed a claim in said court to the full amount of the fund.

Appellant's position was, and is, that he is entitled to the whole of said fund. He claims half thereof by virtue of his contract with Starkloff, and the other half by reason of an assignment executed by Starkloff to him on January 3, 1952. Prior to the assignment appellant advanced or loaned to Starkloff money as follows: September 10, 1951, $300; October 10, 1951, $700; November 12, 1951, $150; December 12, 1951, $1,500. Subsequent thereto and on December 29, 1952, appellant paid to Omer H. Avery $200 for services rendered by him in assisting in the trial of plaintiff's case.

The claim of respondent to the fund is based upon the indebtedness of Starkloff for income taxes. In this connection it was undisputed that the assessment list was received by the Collector of Internal Revenue on October 17, 1949, and that respondent caused notice of lien for unpaid taxes under Internal Revenue Laws to be filed in the office of the Recorder of Deeds of St. Louis County, Missouri, on January 12, 1950, and in the office of the Recorder of Deeds of Lincoln County, Missouri, on April 10, 1953. Appellant and respondent stipulated in the trial court that in 1950 and 1951, Starkloff was a resident of St. Louis County, Missouri.

The judgment rendered below directed the sum of $13.20 paid out of the fund held by the circuit clerk to defray court costs, and the balance of $1,869.30 distributed equally between appellant and respondent, each to receive $934.65. Follow-

ing unavailing motions for new trial, both parties appealed from the judgment of the trial court. However, respondent has abandoned its appeal.

Appellant has seven points in his brief, in which we find some duplication. Essentially, his contentions are: (1) Neither the filing of the assessment list with Collector of Internal Revenue nor the filing of notice of tax lien in the office of the Recorder of Deeds of St. Louis County, Missouri, constituted notice to appellant; (2) the interest of Starkloff in the lawsuit wherein he was one of the attorneys representing plaintiff, was an "intangible, inchoate, conditional, or contingent interest", and therefore not subject to the lien of respondent; (3) Omer H. Avery, employed as local counsel to assist in the trial of the case, had lien upon proceeds of judgment and right to assign his interest therein to appellant, consequently the court should have taken the amount of $200 paid by appellant to Avery into consideration in rendering judgment.

Respondent's lien for unpaid taxes due from Starkloff arose by virtue of Title 26 U.S.C.A., § 3670,[1] and its claim of priority is based upon Title 26 U.S.C.A. §§ 3671 and 3672.[2] Pursuant to the provisions of said section 3672, this state enacted a statute, Section 14.010 RSMo 1949, V.A.M.S., providing for the filing of notice of liens for taxes due the United States.

■ The lien of respondent came into existence on the date the assessment list was received by the collector. Section 3671, supra; Citizens State Bank of Barstow, Tex. v. Vidal, 10 Cir., 114 F.2d 380; Filipowicz v. Rothensies, D.C., 43 F.Supp. 619; U. S. v. Maddas, D.C., 109 F.Supp. 607. However, as to any mortgagee, pledgee, purchaser, or judgment creditor, the lien was not valid and effective until notice thereof was filed by the collector in accordance with the law of the state in which the property subject to the lien is situated. Section 3672, supra. In this state the notice must be filed in the office of the recorder of deeds where the property subject to lien is situated. Section 14.010, supra. Appellant's position is that he was a "purchaser" within the meaning of the applicable statute. While respondent does not concede that this status existed, nevertheless it has briefed the case on that theory, and contends that even though appellant did in fact purchase the interest of Starkloff in the fee which accrued under contract with plaintiff, he acquired same with the lien of respondent impressed thereon.

■ As stated, in 1950, when the notice of the lien for unpaid taxes was filed in the recorder's office of St. Louis County, Missouri, and in 1951, when Starkloff's right or interest in the lawsuit of plaintiff v. Chester Gray came into existence, he was a resident of that county. This being true, and inasmuch as Starkloff's right was an intangible, the situs thereof was the domicile of Starkloff, i. e., St. Louis County. 15 C.J.S., Conflict of Laws, § 18(c), page 928; State of California ex rel. Hauser v. St.

---

1. "§ 3670.  Property subject to lien
"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

2. "§ 3671.  Period of lien
"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time."
"§ 3672.  Validity against mortgagees, pledgees, purchasers, and judgment creditors
"(a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—
"(1) Under State or Territorial laws. In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; * * *."

Louis Union Trust Co., Mo.App., 260 S.W. 2d 821. Therefore respondent complied with the provisions of the applicable statutes, and the filing of the notice of lien in St. Louis County, Missouri, constituted notice to appellant, Glass City Bank v. United States, 326 U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56; Grand Prairie State Bank v. United States, 5 Cir., 206 F.2d 217; United States v. Phillips, 5 Cir., 198 F.2d 634; MacKenzie v. United States, 9 Cir., 109 F.2d 540, and subjected appellant's interest in fee acquired from Starkloff to the lien of respondent. Equitable Life Assur. Soc. v. Moore, D.C., 29 F.Supp. 179; United States v. Phillips, supra; MacKenzie v. United States, supra; U. S. v. Security Trust & Savings Bank, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53.

■■■ Title 26 U.S.C.A. § 3670, has been construed as extending the lien of the United States for unpaid taxes to property acquired by tax delinquent after the lien became effective. Glass City Bank v. United States, supra, in which lien was applied to earnings of taxpayer for services rendered five years subsequent to date lien was recorded; United States v. Graham, D.C., 96 F.Supp. 318, lien effective as to rents under a lease executed by taxpayer after lien came into existence; Nelson v. United States, 9 Cir., 139 F.2d 162, applied to grape crop grown two years after filing of lien in the office of the proper county official; Citizens Nat. Trust & Savings Bank of Los Angeles v. U. S., 9 Cir., 135 F.2d 527, lien applied to interest of taxpayer in the estate inherited by him seven years subsequent to date tax lien was filed in county recorder's office.

No useful purpose would be accomplished by reviewing the numerous cases cited by appellant in his brief. It is sufficient to say that careful consideration thereof reveals that the courts, in deciding those cases upon the particular facts presented, announced no rule contrary to that laid down by the courts in the cases hereinabove mentioned. Applying the doctrine announced therein, Starkloff's interest and right in the lawsuit which eventually terminated in judgment for plain-

tiff was "born with the tax lien impressed thereon", United States v. Graham, supra, 96 F.Supp. loc. cit. 321. Notice of the lien having been filed in the proper county on January 12, 1950, nearly two years prior to the assignment of Starkloff's interest in the fee to appellant, respondent's lien was paramount, and the trial court properly ruled that Starkloff's portion of the fee, being one half of the fund in question, should be applied toward payment of his indebtedness to the respondent.

■■ In making the final point, that the trial court erred in failing to take into consideration the payment of the sum of $200 to Omer H. Avery for services rendered as local counsel, appellant urges that Mr. Avery " * * * would have had a lien upon the funds for his fee, and which he duly assigned to appellant by endorsing the original draft when it was paid to him". The weakness of appellant's position lies in the fact that Mr. Avery was not employed by plaintiff. The rule is tersely stated in State ex rel. Massman Const. Co. v. Buzard, 346 Mo. 1162, 145 S.W.2d 355, loc. cit. 357, as follows: "(as said in the Mills case, supra) 'there can be no lien in favor of the attorney unless there be a contract debt due him from the client.'" Mills v. Metropolitan St. Ry. Co., 282 Mo. 118, 221 S.W. 1. In Smith v. Wright, 153 Mo.App. 719, 134 S.W. 683, also cited in State ex rel. Massman Const. Co. v. Buzard, supra, it was announced that if the assistant attorney was employed by the principal attorney and the latter made the employment for the client and by his authority, the lien may be enforced by the assistant attorney. But in this case there was no showing made that would permit us to apply the rule laid down in the Smith case.

Stewart v. Kane, Mo.App., 111 S.W.2d 971, relied upon by appellant, is not in point and does not support his contention. In that case the independent attorney claimed a portion of the fee of the principal attorney by virtue of an equitable assignment. No claim was made that an attorney's lien on the fund paid into court existed in favor of such independent attor-

ney. There was ample proof that the attorney asserting the equitable assignment had entered into a contract with the principal attorney whereby 10% of the total fee was to be paid to the attorney who asserted his right as an assignee. In the instant case, for aught that appears in the record, no understanding or agreement was entered into between the attorneys when Mr. Avery was employed with respect to his compensation, the only testimony relating thereto being that, following date of rendition of the judgment in favor of plaintiff, appellant paid Mr. Avery the sum of $200 for the services rendered by him.

We have concluded that the judgment of the trial court was proper and should be affirmed. It is so ordered.

SAM C. BLAIR and FRANKLIN FERRISS, Special Judges, concur.

## On Motion for Rehearing

MATTHES, Judge.

Appellant has filed a motion for rehearing in which he urges that our opinion is diametrically opposed to the opinion of the Circuit Court of Appeals, Eighth Circuit, in the case of National Refining Company v. United States, 160 F.2d 951. In that case the United States and the National Refining Company were rival claimants to a fund in the registry of the United States District Court. The Government's claim to the fund was based upon a lien for unpaid federal taxes assessed against one McDowell for the years 1935 to 1945. The lien was perfected in July, 1945, as against any mortgagee, pledgee, purchaser or judgment creditor by recording of notice of tax lien. Appellant National Refining Company's claim to fund was based upon an equitable assignment made to it by McDowell in October, 1940. See National Refining Company v. McDowell, Mo.Sup., 201 S.W.2d 342.

In finding that the claim of the National Refining Company was entitled to priority, the Circuit Court of Appeals said, 160 F.2d loc. cit. 955:

"Our conclusion is that the fund in suit represents a commission assigned to appellant by McDowell in 1940; that the commission became available to McDowell on May 17, 1945; and that appellant, as his assignee, is entitled to the fund."

It is readily observable that the National Refining Company case is clearly distinguishable on the facts from the instant case. Whereas in this case the assignment was made subsequent to the perfecting of the Government's lien, in the National Refining Company case the court found that the assignment was made in 1940, and the amount became available on May 17, 1945, both dates being prior to the date that the Government perfected its lien in July of 1945.

Appellant's motion for rehearing should be overruled. It is so ordered.

SAM C. BLAIR and FRANKLIN FERRISS, Special Judges, concur.