In the Matter of the **MILLS COMPANY, Inc., Bankrupt.**
No. 4123.

United States District Court
S. D. Mississippi, Jackson Division.
Jan. 18, 1957.

Jack McDill, Asst. U. S. Atty., for the United States.

Val Surgis, Jackson, Miss., for City of Jackson.

Swep S. Taylor, Jr., Jackson, Miss., trustee.

BENJAMIN C. DAWKINS, Sr., District Judge.

The Mills Company, Inc., a general mercantile dealer in the City of Jackson, Mississippi, filed its voluntary petition and was adjudged bankrupt on February 17, 1955. Swep S. Taylor, Jr. was appointed Receiver by the Referee and thereafter succeeded himself as Trustee. Among claims filed were the following, which are the only ones now before the Court for review:

1. By the United States, for the sum of $1,357.26, by the Director of Internal Revenue for the District of Mississippi[1] and

2. By the City of Jackson, through its Tax Attorney, supported by affidavit of its Assistant Tax Collector[2] on November 4, 1955 for the sum of $298.35, to which was attached assessment slip

1. "1. That the Mills Company, Inc., above named, is justly and truly indebted to the United States in the sum of $1,357.26 with interest thereon as

hereinafter stated, $ accruing , a total of $ accruing .

"2. That the nature of the said debt is Internal Revenue taxes due pursuant to law as follows:

| Nature of Tax and Statute Involved: | Year or Taxable Period Ended: | Amount Of Tax: | With Interest at the Rate of 6% per Annum |
|---|---|---|---|
| * WT 5–5292–54 | 1st Qr. 1954 | $328.43 | From 5/11/54 to date of Payment |
| ** WT 8–5186–54 | 2nd Qr. 1954 | $428.73 | From 8/11/54 to date of Payment |
| WT–2–23–8435–55 | 3rd Qr. 1954 | $448.28 | |
| WT–2–23–8436–55 | 4th Qr. 1954 | $151.80 | |

* Statement of Secured Creditor Rights
** Form 23C signed 5–10–54
Notice & Demand Issued 5–11–54
Notice of Tax Lien filed June 5, 1954 in Hinds County, Mississippi
** Form 23C signed 9–3–54
Notice & Demand issued 8–11–54
Notice of Tax Lien filed 9–17–54 in Hinds County, Mississippi

"I. That said debt has priority, and must be paid in full in advance of distribution to creditors, as and to the extent provided in Section 64 or Section 659 of the Bankruptcy Act [11 U.S.C.A. §§ 104, 1059], Section 3466 of the revised statutes [31 U.S.C.A. § 191], or other applicable provisions of law. Attention is also called to the provisions of Section 3467 of the revised statutes [31 U.S.C.A. § 192], with respect to the personal liability of every executor, administrator, assignee or other person who fails to pay the claim of the United States in accordance with their priority."

2. "Comes now the City of Jackson, Mississippi, by its Tax Collector, and presents its claim for 1955 ad valorem personal property taxes in the amount of $298.35, a certified copy of which is attached hereto and made a part hereof as if it were written herein, which the City prays will be approved for payment

or notice of ad valorem "taxes on personal property" valued at $7,800 and dated November 1, 1955.

July 9, 1956, the Trustee in Bankruptcy filed objections to the City's claim upon grounds: (1) That the Government's claim for said sum of $1,357.26, "according to its allegations * * * and the records in Hinds County * *" reflect the tax liens had been duly filed in the office of the Chancery Clerk of that County "on June 5, 1954 and on September 7, 1954 * *· * by * * * Enochs, District Director of Internal Revenue * * *" and on August 8, 1955 in the office of the Referee;

(2) That the City of Jackson has also filed its claim for taxes and is seeking to have such tax apportioned as an administrative expense and that other claims by the State of Mississippi and the Mississippi unemployment Commission have also been filed; further that "under the laws of the United States * * * the claim of the Government" based on its tax lien had been recorded prior to the adjudication in bankruptcy, therefore had "priority * * * on all funds remaining in the Trustee's hands after the payment of the administrative expense up to the amounts claimed by the United States * * * should be paid to them, and that any amounts remaining * * * should be paid proratally to the City of Jackson and State of Mississippi and the other tax claimants."

The Trustee prayed for a hearing "and that an order be entered adjudicating the rights of the claimants."

The Trustee, having sold the assets of the Bankrupt, filed his final account on August 18, 1956 showing:

| "Total Receipts | $5,668.15 |
|---|---|
| Total Disbursements | 3,688.81 |
| Balance on Hand | $1,979.34" |

Claims filed and allowed:

| "Priority | Secured | Unsecured |
|---|---|---|
| $10,980.55 | $378.84 | $22,733.76 |

"There will be no dividends for general creditors."

On this report, the Referee issued his order September 8, 1956, giving notice of a hearing to be held September 19, 1956 on all claims, including those of the Government and the City of Jackson, Mississippi, as to their alleged priorities.

The hearing was held accordingly, and on September 21, 1956, the Referee entered his order as follows:

"That there is no merit to the claim of the City of Jackson to have the 1955 ad valorem taxes to the City of Jackson paid as a part of the Administrative costs in administering the estate, and is further of the opinion that the lien claim filed by the United States of America should be paid in advance of the City of

as an administrative expense of the trustee liquidating The Mills Company, Inc., Bankrupt No. 4123.

"Section 9756 of the Mississippi Code of 1942 provides for the assessment and collection of ad valorem taxes from trustees. Gerard v. Duncan, 84 Miss. 731, 36 So. 1034, 66 L.R.A. 461.

"In view of the citations given the city prays that its claim for ad valorem personal property taxes as an administrative expense of the trustee will be approved for payment.

"I, Mrs. J. R. Skinner, the duly appointed, qualified and acting City Clerk and lawful custodian of the minutes of the Council and seal of said City, certify that the assessment in the name of Stuart's, 201 N. Farish Street, Jackson,

Mississippi, as it appears on Page 186, Line 1 of the Personal Assessment Roll, City of Jackson, Mississippi, for the year 1955 is as itemized below, to-wit:

| "Total valuation | $7,800.00 |
|---|---|
| Column #4– Amount of money employed in merchandise | 6,000.00 |
| Column #6– Office or store fixtures or equipment and/or adding machines, cash registers, and typewriters | 1,000.00 |
| Column #13–Air Conditioning, heating and/or sprinkler systems | 800.00 |

"Witness my signature and official seal of office this 21 day of October, 1955."

Jackson's claim for Taxes and the Trustee is therefore Ordered to pay from the balance of the estate, first, the claim of the United States of America, their claim for Taxes due and owing for taxes as set out in their claim as a lien, and after paying said claim, to distribute the balance of the assets, if there be any, to the remaining creditors, including the City of Jackson, in the order of their priority."

This order was filed October 3, 1956. Thereafter, on the same day, that is, October 3, 1956, the City filed its petition for review, quoting the Referee's order, alleging that the said "findings and order were erroneous in that same is not in accordance with the law and the facts in the case."

If any note of evidence of the hearing before the Referee was taken, it does not appear in the record which consists of three separate files, the Clerk made up from a mass of documents at the court's request, and it has been necessary to examine each carefully to glean the information upon which to dispose of the matter. Little help has been given by counsel.

The City's original claim that the sum of $298.35 was due, was based upon an alleged assessment of ad valorem taxes to wit:

| "Merchandise | $6,000.00—Total Tax |
| | $298.35 |
| Fixtures | 1,000.00 |
| Air Condition, Heating and/or Sprinkler Systems | 800.00 |
| Total Valuation for the year 1955." | $7,800.00 |

This assessment bears date November 1, 1955 and is certified to by the Clerk of the City, "lawful custodian of the minutes of the Council, and the seal."

It does not appear necessary to deal here with anything but the claimed priorities of the Government and City upon the funds in the hands of the Trustee. That of the United States rests mainly upon Sections 6321 [3] and 6323,[4] Tit. 26 U.S.C.A. (the Internal Revenue Code of 1954).

■■ By reference to that portion of the Government's claim quoted above, it

3. "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

4. "(a) Invalidity of lien without notice.— Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor *until notice* thereof has been filed by the Secretary or his delegate— "(1) Under state or territorial Laws.— In the office designated by the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law designated an office within the State or Territory for the filing of such notice; or "(2) With clerk of district court.—In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law designated an office within the State or Territory for the filing of such notice; or * * * "(3) Form of notice.—If the notice filed pursuant to subsection (a) (1) is in such form as would be valid if filed with the clerk of the United States district court pursuant to subsection (a) (2), such notice shall be valid notwithstanding any law of the State or Territory regarding the form or content of a notice of lien."

will be seen that the taxes claimed were for the year 1954, covering the four quarters of that year. It also shows the liens for the total amount claimed were properly filed and notice given. The Trustee, who was his own attorney, verifies this statement opposing the City's claim and submitting the matter to the Referee. With no other evidence to the contrary it is, therefore, found as a fact that the claim and lien of the United States had arisen and was perfected before bankruptcy on February 17, 1955.

On the other hand the City's claim, on its face, is for taxes of 1955, which were not assessed until November 1st of that year. Therefore, even accepting its theory that the tax and lien accrued from January 1st of each year, no such condition is present here, because the Government's claim and lien had been perfected before January 1, 1955.

For these reasons I do not believe it necessary to engage in any extended discussion of the State statutes, or the decisions cited.

■ As to the contention that the City's claim should be paid as an administrative expense, I believe it sufficient to say that the whole proceeding was one of liquidation, not a continuation of the business. While there are expressions in some of the cases cited that might be so construed, I believe it sufficient to say, without analysis, that the facts therein were quite different, and those comments were obiter dictum, when applied here. The Government's lien took effect from the recording of the notice and was superior to all others. Grand Prairie State Bank v. United States, 5 Cir., 206 F.2d 217. See also Knox v. Great West Life Assurance Co., 6 Cir., 212 F.2d 784.

If the City's claim and lien could not prevail over that of the United States because the latter was first to accrue and be perfected, the former could not be elevated to a higher rank by simply calling it an administrative expense. I accordingly hold the disposition made by the Referee was correct.

A judgment in accord with this ruling should be presented for signing.